AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>**Samsung cellular phone (B) further described in<br>Attachment A** | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:24- MC - 0421 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment "A"

located in the _____ **Middle** _____ District of _____ **Pennsylvania** _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

**FILED**
**HARRISBURG, PA**
MAY 15 2024
PER_____
DEPUTY CLERK

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. §841(a) | Possession with intent to distribute a controlled substance. |
| Title 18 U.S.C. §922(g) | Possession of a firearm by a prohibited person |
| Title 18 U.S.C. §924(c) | Possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

I, Brittany Brenner, being first duly sworn, hereby depose and state as follows:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brittany Brenner / ATF TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ **telephone** _____ *(specify reliable electronic means).*

Date:  **MAY 15, 2024**

_____
*Judge's signature*

City and state:  Harrisburg, PA

Daryl F. Bloom, U.S. Magistrate Judge
*Printed name and title*

## CONTINUATION PAGES OF AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Pennsylvania State Trooper and have been since November 2007. I am currently assigned as a full-time Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since January 2021. I am a graduate of Kutztown University in Kutztown, PA with a Bachelor of Science degree in Criminal Justice. I also attended Carlow University in Pittsburgh, PA and obtained a Graduate Certificate in Cyber Threat Analytics. I am currently assigned to the ATF Philadelphia Field Division, Harrisburg Field Office, which is comprised of ATF Special Agents whose primary responsibilities include investigating individuals or groups who have committed violations of the federal firearms and narcotics laws.

2.      After graduating from the Pennsylvania State Police (PSP) Academy, I was assigned to the patrol unit at Troop J, Embreeville, in Chester County. In 2010, I transferred to patrol at Troop J, Ephrata in Lancaster County. From 2011 to 2012, I was assigned to the Criminal Investigation unit at Troop J, Embreeville, in Chester County. In 2012, I transferred to the Criminal Investigation unit at Troop J, Lancaster in

Lancaster County. In June of 2014, I transferred to the Bureau of Criminal Investigation (BCI), Organized Crime Unit Eastern Task Force. Within BCI, my responsibilities included conducting investigations of corrupt organizations relating to illegal narcotics, public corruption, gambling, and organized crime activities throughout the Commonwealth of Pennsylvania; in particular, central Pennsylvania. In my capacity as a Pennsylvania State Trooper, I have investigated numerous violations of the Pennsylvania Crimes Code. These crimes include homicide, robbery, burglary, tampering with evidence, theft, narcotic violations, forgery, sexual assaults, child abuse and corrupt organizations. I have prepared and sworn to or filed numerous criminal complaints for violations of the Pennsylvania Crimes Code. I have also sworn to and executed search warrants in Pennsylvania. In addition, I have obtained telephone and financial records for various criminal investigations. In these investigations, I have utilized numerous investigative techniques including, but not limited to, interviewing victims, witnesses and suspects/defendants; execution of search warrants; use of informants; undercover operations; physical surveillance; analyzing information obtained from court-ordered pen registers and trap and trace intercepts,

2

and analyzing telephone toll information; grand jury proceedings; and the use of consensual interceptions of communications within the parameters of the Pennsylvania Wiretapping and Electronic Surveillance Control Act. I am an "investigative or law enforcement officer" within the meaning of Section 5702 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, and in such capacity, I have successfully completed a course which is required for Class "A" certification pursuant to 18 Pa.C.S. § 5724. My Class "A" certification number is A-4660.

3.    The information set forth below is either known to me personally or was related to me by other law enforcement personnel. This affidavit is submitted in support of a search warrant for the stored electronic information and communications on the cellular telephones described in Attachment A.

4.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841, Possession of a Controlled Substance with the Intent to Deliver, Title 18, United States Code, Section 922(g), Possession of a Firearm by a Prohibited Person; Title 18, United States Code, Section 922(j), Possession of a Stolen Firearm; and Title 18, United States Code, Section

3

924(c) Possession of a Firearm in Furtherance of a Drug Trafficking Crime have been committed by **Michael Bret GOLDEN**, last residing at 38 Hillside Estates, McConnellsburg, PA. There is also probable cause to search the property described in Attachment A for evidence, instrumentalities, or fruits of these crimes as further described in Attachment B.

## JURISDICTION

5.    "At the request of a federal law enforcement officer or an attorney for the government . . . a magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property located within the district." Fed. R. Crim. P. 41(b)(1).

## INVESTIGATION BACKGROUND

6.    On January 27, 2024, Trooper Joshua Hoffee of Pennsylvania State Police Troop H, Chambersburg Patrol Unit, was in full uniform and operating a marked patrol unit on State Route 16 in the village of Zullinger near Skyhawk Drive, Washington Twp, Franklin County, Middle District of PA. He observed a gray Honda Civic, PA registration MHX0962 driving 41 MPH in a properly posted 35 MPH zone. Trooper Hoffee performed an NCIC query of the vehicle's registration which

4

revealed the registered owner was the subject of a Franklin County Bench Warrant as well as an arrest warrant out of Washington County Maryland. An NCIC query of the wanted person was conducted and the individual was identified as Michael Bret GOLDEN. A PennDOT photograph was also obtained. Trooper Hoffee initiated a traffic stop on SR 16 near Waynecastle Road.

7. Trooper Hoffee observed the driver making furtive movements inside the driver compartment of the vehicle. Trooper Hoffee approached the driver side of the vehicle and made contact with the operator. Trooper Hoffee positively identified the operator as Michael Bret GOLDEN.

8. GOLDEN was ordered to exit the vehicle and informed that he had a warrant for his arrest. GOLDEN was removed from the vehicle due his initial hesitation to comply. Trooper Hoffee observed a glass smoking device in the lower door storage compartment in plain view and within the wingspan of GOLDEN.

9. GOLDEN was taken into custody and a search incident to arrest was conducted. GOLDEN was in possession of large orange-tinted glassine style bag containing suspected Adderall pills. This bag was

5

concealed on his person within a hooded sweatshirt pocket.  GOLDEN admitted to not having a prescription for the pills and identified them as Adderall.

10.    GOLDEN told Trooper Hoffee that he was coming from a "storage unit" prior to the traffic stop. GOLDEN continued to display a high level of nervousness and was evasive when asked questions about whether any further items related to narcotics and firearms were present within the vehicle. Trooper Hoffee observed GOLDEN's inability to not stop moving throughout the interaction.  GOLDEN attempted to change the subject multiple times, answered questions incorrectly, and displayed dry mouth. GOLDEN further made unsolicited statements such as "I"m never going home" indicating a consciousness of guilt. Prior to being placed in the patrol vehicle, GOLDEN advised Trooper Hoffee that he was in possession of "Tina" in his right front watch pocket, which Trooper Hoffee removed. Trooper Hoffee knows that "Tina" is a slang term used to identify crystal methamphetamine, based on his training and experience.

11.    The gray Honda Civic was towed from the scene to Troop H, PSP Chambersburg, pending a search warrant.

6

12.     Trooper Hoffee obtained a search warrant for the vehicle. Trooper(s) Rhine, Kaschak and Hull and executed the search warrant on the gray Honda Civic and located several items relevant to this investigation.  Two firearms were recovered, specifically a Taurus PT845 .45 ACP pistol (serial number NHM78875) and a stolen Taurus G2S 9mm pistol (serial number ABG668076) were located in two locked soft Allen-brand pistol cases and were concealed within a large duffle bag full of men's clothing and toiletry items.  The duffle bag was on the rear passenger seat directly behind where GOLDEN was seated within the vehicle. The duffle bag also contained multiple cell phones, including the target cell phone listed in Attachment A, and the false "Yeti" brand can that concealed multiple 32 gb SD cards, a Micro SD card reader, and a USB Flash Drive. The bulk suspected methamphetamine was located in a black carry bag that was in the middle of the rear passenger seat directly next to the duffle bag. A "ledger" containing names and phone numbers and a small digital scale were also seized from the small black carry bag.  Also, a locked false dictionary safe containing suspected bulk methamphetamine, bulk glassine bag packaging material, a clear glassine bag with a pill capsule containing a white powdery unknown

substance, and a SIM card for a cellular device were found in the small black carry bag. In a tan carry bag in the trunk was a fully loaded Hi-Point CF380 .380 pistol (serial number P8073925).

13.   All Items were entered into evidence at Troop H, PSP Chambersburg.





14.     GOLDEN's   criminal   history   includes   the   following

convictions:

      a.   On April 12, 2022, GOLDEN pleaded guilty to Terroristic

         Threats With Intent to Terrorize Another, in violation of

         18 Pa. Stat. § 2706(a)(1) and was sentenced to 6 months'

         to 23 months imprisonment. *See*, CP-28-CR-000066-2021;

      b.   On   April   14,   2022,   GOLDEN   pleaded   guilty   to

         manufacture,   delivery,   or   possession   with   intent   to

         manufacture   or   deliver,   a   controlled   substance,   in

violation of 35 Pa. Stat. § 780-113(a)(30) and was

sentenced to 6 months to 23 months imprisonment.

See, CP-28-CR-0000445-2022;

15.    Based upon my training and experience I know that persons

involved in drug trafficking often carry firearms to protect themselves,

their drugs, and their money.

16.    I also know that they often use cellular phones to help

facilitate their illegal drug and firearm activity. For instance, they

commonly use them to store names and telephone numbers for their

customers, suppliers, and associates, and use them to communicate with

their customers, suppliers, and associates. I know that drug traffickers

often take, or cause to be taken, photographs of themselves, their

associates, their property (including firearms), and their product and

that these photographs are often maintained in electronic format on

cellular telephones. I also know that they commonly use applications to

transfer money as payment for the illegal drugs.

17.    Also, based on my knowledge, training, and experience, I

know that electronic devices can store information for long periods of

time. To my knowledge and belief, the seven cell phones (two AT&T,

Motorola, Nokia-Motorola, two Samsung, and one Verizon) described in
this affidavit have been stored in a secure location at Troop H, PSP
Chambersburg Barracks and are in substantially the same state as when
they were recovered.

18.    Based on my training and experience, I am aware that the
contents of a cellular telephone can easily be transferred from phone to
phone when a new phone is purchased, meaning the purchase of a new
phone does not necessarily indicate the loss of any of the phone's content.

19.    Based on the facts of the case, I believe the seven phones may
contain historical information relating to the investigation, including
conversations between GOLDEN and customers, location information,
and evidence related to the crimes committed.

20.    Based on the facts set forth herein, I request authority to
search Michael GOLDEN's cellular phone, described in Attachment A,
for violations of Title 21, United States Code, Section 841, Possession of
a Controlled Substance with the Intent to Deliver, Title 18, United States
Code, Section 922(g), Possession of a Firearm by a Prohibited Person;
Title 18, United States Code, Section 922(j), Possession of a Stolen

11

Firearm; and Title 18, United States Code, Section 924(c) Possession of a

Firearm in Furtherance of a Drug Trafficking Crime.

## TECHNICAL TERMS

21.   Based on my training and experience, I use the following

technical terms to convey the following meanings:

    a.   Cellular telephone: A cellular telephone (or wireless telephone or mobile telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending,

receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These

signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

14

d.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

15

f.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

g.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media

16

for storing data and a keyboard and/or touch screen for
entering data. Removable storage media include various
types of flash memory cards or miniature hard drives.
This removable storage media can store any digital data.
Most PDAs run computer software, giving them many
of the same capabilities as personal computers. For
example, PDA users can work with word- processing
documents, spreadsheets, and presentations. PDAs may
also include global positioning system (GPS) technology
for determining the location of the device.

22.    Based on my training, experience, and research, I know that
the devices listed in Attachment A have capabilities that allow them to
serve as wireless telephones, digital cameras, portable media players,
GPS navigation devices, and/or PDAs. In my training and experience,
examining data stored on devices of these types can uncover, among other
things, evidence that reveals or suggests who possessed or used the
devices. Additionally, the telephones may contain call logs, address
books, text messages, emails, videos, photographs, or other stored data
relevant to this investigation.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24.    *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe this forensic electronic evidence might be on the devices because:

     a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

25.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

## CONCLUSION

26.    There is probable cause to believe that GOLDEN utilized the seven cellular phones located in duffle bag also containing men's clothing and toiletry items, which was located on the rear passenger seat directly behind GOLDEN, to traffic drugs.

27.    There is probable cause to believe that GOLDEN's phones contain communications as well as evidence of his criminal behavior.

28.    I respectfully submit that this affidavit supports probable cause to believe that evidence of 18 U.S.C. § 922(g) (possessing a firearm by prohibited person) and 21 U.S.C. § 841 (possession of a controlled substance with the intent to deliver) 18 U.S.C. § 922(j), Possession of a Stolen Firearm and 18 U.S.C. §924(c) Possession of a Firearm in Furtherance of a Drug Trafficking Crime will be found in the stored electronic information and communications within GOLDEN's cell phone described in Attachment A.